I'm glad you said that. I'm hoping it's even true. It actually is. Go ahead. Kara Hartzler on behalf of Mr. Mendez. May it please the Court. First of all, if the Court wants to put any cards on the table, I'm certainly open to that as well. As a matter of law, no prior order of removal exists upon which to base Mr. Mendez's illegal reentry conviction. At the time that ICE ordered Mr. Mendez removed, it had not served him notice of the removal proceedings, which meant that under the agency's own regulations, it lacked jurisdiction to issue a removal order. But even assuming that a removal order did exist. But he was removed. He was physically taken out of the country. I don't think that's the same thing. He wasn't legally removed because there was no jurisdiction to issue an order. And without jurisdiction, all they did was physically transport him out of the country. That's basically our argument. Now, in the context of jurisdiction, the rules are a little bit different. Now, most of the time when we do the 1326d motions, we have a situation where removal proceedings have actually started. And then something in that removal proceeding was fundamentally unfair. And so we look at that fundamental unfairness and we look at prejudice. Here we have a kind of unique situation because under the agency's regulations, removal proceedings don't actually commence until the person is served with the notice of the removal charges. And here there's no factual dispute. The government and we both agree that Mr. Mendez was not served notice of the charges until after the final order was issued. Right. So then he is served. Removal proceedings commence. It happens that the form, it's basically a form, has already been filled out and signed. Correct. It's then served on him. Correct. So what? There we go. I mean, yes, at the moment the person signed it, there wasn't authority to issue it. But by the time it got around to serving it on your client, everything was a go. So the problem, we believe, with that, Your Honor, is that he was served, but then no new order was ever issued. So what? That's what I'm saying. So, I mean, all that needed to happen was an order needed to be served upon him and then executed, and it was. And all of that occurred after proceedings did commence. It's just that I know what you're saying. There's a defect in the timing if everything had been followed to the script. But kind of what's the big deal? Let's analogize this to a civil proceeding. Let's say that a court had a case before it and the person was never served. There was no personal jurisdiction. And then the court nevertheless issues a judgment. Now, if the person is then served afterwards, that doesn't mean that you could somehow resurrect personal jurisdiction and make the prior judgment valid. You can't do that. Jurisdiction either existed in that moment or it didn't. And because it didn't, you can't just say that service afterwards somehow imbues new life into this removal order that was null and void at the time that it was issued. So that's essentially our argument. And we acknowledge that this is a little bit different than a lot of other cases. But the bedrock principle of civil procedure in these types of situations is that once you don't have jurisdiction in that moment, that's it. There's no going back. You're analogizing to court jurisdiction, but this is an administrative proceeding. It doesn't operate quite the same way. Correct. But, for instance, in the ---- I mean, he didn't challenge. He didn't say, oh, I got the order, now I'm going to challenge it. So we know that he went along with the whole thing. So this is not a situation where you can claim prejudice in any way. And he gets to where he says, wait a minute, wait a minute, I got this order, I want to object. He went along. Well, the fact that it's immigration law, Your Honor, I think it doesn't necessarily matter because there is plenty of immigration case law saying that an immigration judge, for instance, can't issue an order of removal if the person's never been served with a notice to appear. So the same principle carries over. Now, in terms of prejudice ---- But didn't he have an administrative remedy under 1362d? You may have the statute wrong. No, you have the statute right, Your Honor. So essentially, I think then ---- So is your argument that he didn't have to do the administrative remedy because they didn't have jurisdiction to start with? That could be. But I think the other argument we would say, Your Honor, is that the administrative remedies all occurred at the time that he was served with a notice of intent. But he didn't actually get the final notice, the final order, until after that. So in other words, he didn't realize there had ever been a jurisdictional problem until after the time had passed to exhaust his administrative remedies. If that makes sense. The other thing that we would argue in terms of both administrative remedies and judicial review, Your Honor, is that the form that he was given never told him that he had any ability to challenge the legal question of whether he had actually been, for instance, convicted of an aggravated felony. So he had no ability to challenge that legal question. And this Court has held numerous times that when there's no advisal of the person's remedies, then they're excused from meeting those remedies. You were going to talk about prejudice, I thought. Oh, I'm sorry. The other ---- Yes, thank you. But let me just make sure I have the way you're arguing this case right in my mind. Your first out-of-the-box argument is that the 1326d framework doesn't apply at all because there was no order of removal to begin with. That's right. And let's say that we rejected that. Right. We thought we were under 1326d. You would then need to ---- and let's assume that this was a violation of due process of some sort because ---- but what would be the prejudice? It doesn't seem to me there is any here because we know what his ultimate response was when he got the notice and he basically didn't want to do anything. Well, I think then the Court would turn to, for instance, cases such as Camacho Lopez and Aguilar Rios. And there the Court held that when a person was removed when they should not have been, that in itself is prejudice. So we would rely on those cases for prejudice. No, I guess that's not registering with me because I'm saying we are going to pretend that this ---- there was a notice, there was an order of removal. Fine, there was a defect in the timing. But what's the prejudice to him given that, I mean, he eventually said, I don't want to contest this. So we ---- Then I think, Your Honor, we move on to our next argument. We move on to the aggravated felony. We move on to the ---- Okay. So you need us to be convinced that this, in a very technical way, there just simply was never an order of removal that ever materialized. If Your Honor is not buying my argument about Camacho Lopez and Aguilar Rios, then yes. But I think that that would provide us. But if you're not, then I would agree we move on. Okay. So I want to just talk very briefly about the attempted murder issue because I know the case before us discussed that at length. We're proceeding under a slightly different legal theory. And our legal theory is based on the California Supreme Court's denial of certiary and Justice Goodwin Liu's dissent from that denial in Cruz-Santos. And Cruz-Santos in this case provides the realistic probability that you need under the categorical approach to say that a person can be convicted under California murder, under the California murder statute, for basically what would amount to working at a marijuana farm and carrying a firearm. And I did a very extensive search of a lot of other states. I didn't find anything that came anywhere close to that, where a person in another state could be convicted of murder for that set of facts. And I think it's also significant that the government, in their brief, didn't come up with any other states or any other jurisdictions where that would count or where a person could be convicted of murder for that. So essentially we believe that because California's definition of the natural and probable consequences doctrine in the murder context is so expansive, as both Justice Goodwin Liu and other states have acknowledged, that that's what makes it overbroad. Now I just want to also, as a last point before I sit down, say, if the Court agrees with us on that, it doesn't mean that California's natural and probable consequences doctrine is overbroad as to every single California offense. We're only talking about murder. And so the Court's holding in that respect would be very limited. And with that, with the Court's permission, I will reserve the rest of my time. Okay. Thank you. We'll hear from the government. May it please the Court. Ajay Krishnamurthy for the United States. With respect to attempted murder and accomplice liability, the rule in California has always been that an accomplice is held responsible for not only the crime that he intended to aid in a bet, but the natural and probable consequences of that crime that his principal might also commit. That was true when the Supreme Court decided Dwayne Azalvarez in 2006, and that's still true today. And it has also always been the case that it is not the elements of that first crime that matter, but the nature in which it's committed. So, for instance, in Dwayne Azalvarez, the Supreme Court also considered a California case in which that culpability gap that Justice Liu speaks about exists. One of the decisions in that case was Montez, a case in which a defendant was held viable for attempted murder after intending to aid in a bet breach of the peace. Again, breach of the peace carries a maximum sentence of 90 days in county jail. And so that potential for that culpability gap has always existed. The argument in this case appears to be a recognition that all the legal principles are the same as in Dwayne Azalvarez, but there are a set of facts that was found to be sufficient in California that would not be found sufficient under federal law or a majority of other jurisdictions. And there's just no evidence of that. I haven't seen any of the cases cite an appendix C to Dwayne Azalvarez, which are the other jurisdictions that apply the same doctrine, say anything along the lines of that the first offense has to be inherently violent. How about the first issue? I wanted to go back to that. The first issue that council addressed, because that's the one, I guess, that bothers me to the extent there's an issue here. It's really that. Why don't you address both parts that there just was no order of removal here given the lack of jurisdiction in the office or at the time that it was issued. And then even if you got past that, why wouldn't we say that the way the proceedings went down here were fundamentally unfair? Taking the second question first, it was certainly a serious defect. Mr. Mendez was not given notice in the manner prescribed by statute. But that in fact is the same defect that this court addressed in Riavaca, in which the court accepted as true, the defendant's statement that he literally did not know he was being removed. And nonetheless, that defendant had to show prejudice. Well, I guess I'm thinking of it more. Judge Kaczynski is certainly right that it's not a direct analogy to court proceedings here. But basically what happened was the adjudicating authority issued a judgment in an administrative proceeding, resolving it against the petitioner before the petitioner was ever given a chance to respond. And obviously the fact that, I mean, I just think of it in our court, you know, if we issued a written disposition resolving the case against the appellant before receiving the appellant's opening brief, I don't think most people would say once we got the brief and we looked at it, we said, oh no, yeah, we're still good with that. Most people would say, no, that's probably an unfair way of conducting an adjudication. And it seems like, isn't that basically what happened here in terms of your kind of, you argue no harm, no foul, because we know what his ultimate response was. But if you step back and look at the way the proceedings went down, it was pretty unfair, wasn't it? I don't mean to diminish the significance of the defect in this case, and which is why we agree that there was a due process violation, which is the first prong, the 1326 D3. But at the same time, the Supreme Court has repeatedly said that process doesn't exist as an end in and of itself, but only to protect some sort of substantive entitlement that someone has. And in this case, in the immigration context, that substantive entitlement is defined entirely by statute. And so some showing of prejudice will always be needed. That's even true on direct review. Thank you. Well, the question, maybe this is not Judge Walsh's question, but the question that I would like to address as a question, is there some jurisdictional aspect of this? If the opposing counsel gave the example, we defendant in a, let's say, civil case, just to make it simple, is not served, and the court enters judgment that there would be no jurisdiction, and even though it may later be proven that the defendant had no defense, I mean just had no defense at all to whatever the claim was, you would still set aside the judgment because it was not proper service, so there's no jurisdiction. Is there some analogous doctrine in the administrative context? Not that I'm aware of. Which I think is what the opposing counsel is arguing. Not that I'm aware of. I haven't seen any decision in any context applying the concept of personal jurisdiction to an administrative proceeding. Well, they have the body is one thing. Excuse me?  It's like a criminal case in a sense because they have the body. So it's hard to say they don't have jurisdiction over the matter because they have the body of the, what do we call it, respondent? I don't know what it is. I guess respondent would be the administrative context. So I guess there is jurisdiction in that sense. Correct. In the criminal context, it's the defendant's presence in the United States which confers personal jurisdiction, and in the same way here it's the sovereign's exercise of personal jurisdiction to the extent it can be characterized that way over Mr. Mendez. But even in the purely civil context, there's nothing talismanic about service which creates jurisdiction. The basis for jurisdiction has always been the minimum context test which is certainly satisfied by someone's presence in that jurisdiction. It is true that service is the mechanism by which a court asserts jurisdiction once that basis exists, but there's simply no comparable rule in the administrative rule proceedings. Can I ask this? Let's say that everything in this case happened just as it did in terms of the timing defect, but instead of the removal order being issued at the, I think it was whatever, I remember it was the 26th, I don't know which month it was now. Instead of it being a proper, I guess it's a DHS official who issues that thing, let's say it was someone who worked for the Postal Service, somebody who clearly just had no authority ever under any circumstances to issue that kind of thing. Would we be in a different situation or would you basically say no? We're still no harm, no foul. It doesn't matter that the person who issued it had no authority to do so. I believe we would be in a different situation because in that case, this is a somewhat circular argument, but Mr. Mendez would have never been removed. Even in the 1326 context, the government still has to prove that a defendant was removed, and if he was removed by someone from the Postal Service who didn't have the authority to conduct removals, we wouldn't be able to meet that element. Well, but their argument is not that much different. So they're saying that the person who issued that thing on the 26th did not have, as a legal matter, did not have the authority to issue it. So I guess I don't see why do you get to say that, well, no, if it was a postal worker, that's totally different, but neither person had legal authority to issue the document that they did on the date that they did. So why would it matter that one was a postal authority person and one was a DHS? But the DHS never has the authority to disregard its own regulations, so every sort of procedural defect has been issued without authority in the same way. And in all of those cases, a defendant is still placed in the 1326D framework. Okay. What I'm saying is – I'm not really following your answer, but – What I'm saying is that in many of these cases, there is some sort of procedural defect. The DHS or the immigration authorities didn't follow their own procedures, which is what happened here. In all those cases, the DHS or the government never has the authority to remove someone without following their procedures, and yet the defendants are always placed in the 1326D framework. This is no different. Right, but I guess my – My question is, if you concede that when the removal order was issued, the person who issued it did not have the authority to do so, and you do concede that, right? I do. So how does – I guess I just – like, how does it happen that somehow that thing springs into validity at some later date? And why wouldn't that also be true if the postal person had issued it? I mean, I think this goes back to the nature of 1326D in the first instance. What this court's decision in Lopez made clear is that the removal order and the validity of that process is only relevant in a 1326 procedure, insofar as the defendant raises that in the context of a 1326D motion to dismiss, which means, of course, that a defendant has to follow all of 1326D's requirements. My point is that in the event that a postal officer had signed that order, the defendant would never have been removed in the first place. I understand that it's a somewhat circular argument, but the government in that case would not have been able to prove that Mr. Mendez had actually been removed. Because why? Because there – he would not – a removal has to happen pursuant to an order. In that case, there would have been – Mr. Mendez would never have been ordered removed. In this case, he has. But he's been ordered removed in a defective process, which is why we agree that there is a due process violation. Nonetheless, it doesn't remove Mr. Mendez's claim from the 1326D framework. Just to make sure I understand. So you're saying even if he had been taken out of the country, let's say the officers who look at this piece of paper don't realize it's signed by a postal worker. They think it's probably signed. And so they take him out of the country. In that case, you would say he was not properly removed. He was not removed. Correct. Because the order was signed by the wrong person. Correct. But you think it's different when the order is issued by the right person or signed by the right person, but there's a defective process. Correct. Because in this case, the defect is Mr. Mendez was not given notice as defined by – as required by the statute. It's not that he was not – he was still ordered to be removed regardless. I mean, in a sense, they don't seem that different, right? Whether you sort of have no chance at contesting it because you didn't get notice or you don't have a chance to contest it because the person signing the order is not an adjudicator, you're still – the result seems the same, doesn't it? I agree that the distinction is – Ephemeral? Yes. That's what you're looking for? Correct. Unless the Court has any further questions, I'm happy to submit. Thank you.  I think you had some time for rebuttal. Thank you, Your Honor. I just want to read the regulation at 8 CFR 238.1b2. Removal proceedings under Section 238B of the Act shall commence upon personal service of the notice of intent. So as the Court, I think, has gotten at this point, that's our argument. Removal proceedings never commenced here. Now, I want to just step back a little bit and point out that if the agency wants to take him out of the country, if they say we can remove you, maybe that's one thing. But here we're actually in a criminal proceeding, and the government is relying on this removal proceeding to prosecute him and to put him in prison. I think that takes it to another level, and even if you think that maybe there was or there wasn't a valid removal proceeding, the fact that we are now – So he sort of counted on the defect by coming in the country and said, ooh, they got it wrong, so I'm going to come in thinking I'm not really violating anything, huh? That's what happened? All I'm saying, Your Honor, is that if the government wants to prosecute Mr. Mendez, it needs to dot its I's and cross its T's, and it didn't do that here. And unless the Court has other questions, I'll submit. Thank you. Thank you, Your Honor.
judges: Kozinski, Watford, Bennett